We begin with Mr. Steedman. That's correct, Your Honor. Good morning. May it please the Court. Wayne Steedman on behalf of the appellants R.F. and her parents. The undisputed findings of facts in the administrative hearing decision are that R.F. did not make progress toward her academic goals and she did not make progress toward her behavioral goals. Now the academic and behavioral goals made up eight of the thirteen goals of R.F.'s IP. The other five goals the administrative law judge held, she made only incremental progress toward. Those goals were addressed through her related service providers, patient therapists, speech therapists, and physical therapists. They met with R.F., the related service providers, met with her collectively three hours and 40 minutes per week, roughly a little more than 10% of the school week. The rest of the time, R.F. was in the classroom where they worked on her academic and behavioral goals, where she made no progress. So what we have is R.F. making only incremental progress, minimal progress if you will, towards approximately 10% of the time that she was in school. This falls far short of the standards set forth by the Supreme Court in Andrew F. v. Douglas County Public School District. In Andrew F., this Court said that a free appropriate public education is one in which the IEP is reasonably calculated to enable the child to make progress in light of the child's circumstances. Neither the district court nor the administrator... Which is a different standard than what you had stated just before that because that's the goal. The fact that the goal may or may not be met is not the same thing as the Andrew F. standard. Well, the Andrew F. standard, Your Honor, talks about progress. And what I was saying before... Well, it's a goal to make progress, but there's nothing in the statute or anywhere else or common sense that says that because you have a goal, you're going to be capable of meeting the goal. And Andrew recognizes that. You allied the part of the standard that says make progress appropriate in light of the child's circumstances. Correct. Which is a pretty critical proviso under facts where standards are challenging because of the medical circumstances. Correct, Your Honor. And in this situation, the Supreme Court made it abundantly clear that progress is... And the ALJ says that a comparison of the baseline with the testimony of all of the witnesses shows incremental progress on some but not all of the goals. So it would not be accurate to say that it's undisputed that there's been no progress. Well, it's undisputed that there was no progress toward her academic and her behavioral goals. That's in the findings of fact at page 49 of the joint appendix. It says very clearly RF did not make progress toward her academic goals and she did not make progress toward her behavioral goals. The other goals, the other five goals, she made incremental progress towards. But those were being addressed through her related service providers, which only saw her approximately 10% of the time. So that's my point. It's what happened with her falls far short of the Andrew F. Standard. And the Administrative Law Judge said that progress should not be used as the factor... or she did not use progress as the factor in determining whether or not RF received a free appropriate public education. But as I said, the Supreme Court made it clear that progress is the primary determinant of whether a child received a free appropriate public education, saying specifically that a substantive standard that does not take into account student progress will do little to remedy the pervasive and tragic academic stagnation that prompted Congress to act. That's a quote from the Supreme Court's decision in Andrew F. So the ALJ's decision not to use progress as a measure of whether or not RF received a free appropriate public education is an error of law. The District Court also did not use the Andrew F. Standard, even though both the District Court and the Administrative Law Judge talked about Andrew F. and even discussed the standard, they both ignored the standard. The District Court basically used the merely more than de minimis standard that the Andrew F. Court had specifically rejected. So what we have here then is both the District Court and the Administrative Law Judge. So is that one of the issues you raised, that they use only the pre-Andrew F. more than de minimis standard? I'm sorry, Your Honor, I missed part of your question. Well, I'm trying to figure out what your issue is. I didn't recall that you raised as an issue that the District Court or the ALJ applied the wrong standard under Andrew F. to the effect that it used only a de minimis standard, which was the pre-Andrew F. standard. I did not specifically say that they used a de minimis standard, Your Honor. What I did point out, though, was that in the District Court decision, the Magistrate Judge used the same language from Raleigh that the Andrew F. Court in the Tenth Circuit used to describe the merely more than de minimis standard. So that's how I addressed it there. I'm sorry, can you tell me where the ALJ said that she would not look at progress as a measure? Yeah, that's at page 85 in the Joint Appendix, Your Honor. It's towards the top of that page, too. So both the District Court and the Administrative Law Judge looked at the severity of RF's disability and said that she was not capable... I don't understand. I'm sorry. The ALJ says, you're right, for a student like RF, using progress or the lack thereof to measure the efficacy of an IEP may not be appropriate, but goes on. I mean, it's clear that the point is that there are going to be places where there's not progress and that that is actually appropriate given the student or to be expected given the student's condition. And then we see, like, three pages reviewing where there was progress, where there was not progress, there was some things. Is it fair to read the ALJ as having said, I will not look at progress as a measure? I mean, what are these three pages about? Well, it's a bit confusing, to be honest, Your Honor. It doesn't seem confusing to me. Well, it's inconsistent because... No, actually, it's only inconsistent if you take that sentence out of context. If you read the... If you go on to the next few pages, she said, using lack of progress may not be appropriate in every circumstance because of the factors that are present here. And it goes on. At one point it says, at the end of the year she may not achieve percentages stated on her objectives. It wouldn't mean that she failed to make progress. But the findings, undisputed findings of facts, are that she did not make progress toward academic and behavioral goals, which were being addressed 90% of the time when she was in the classroom. In light of the circumstances in which that existed. Well, let me talk about that, then, because they did, both the district court and the administrative law judge, did focus on RF's significant disability. But you're not, before you leave that point, you're not arguing that the law requires a guarantee of progress in order to avoid violating the statute. No, I'm not, Your Honor. What I'm saying, though. Because it sort of sounds like that. No. Because what happens is when you have goals that are not being achieved, where a child's not even making progress, then the statute does require that the school system to meet and to review and revise that IEP as appropriate. So here you have a child where the undisputed findings of facts, again, are that she did not make any progress towards those academic and behavioral goals. You know, in your, I'm trying to sort of connect the argument that you're making. What I understood your argument to be was that the CCPS violated the IDEA by failing to educate RF in the least restrictive environment, denying RF parents the opportunity to participate in her educational decision-making, failing to implement the IEP. And right now what we're talking about is a statement in the context of a very lengthy, one of two very lengthy opinions that looked pretty comprehensively at RF's situation. So I'm trying to tie that to the argument that I extracted from your brief. Can you help me with that? What do you ask, what is the thrust of your argument this morning? Well, that RF did not receive a free appropriate public education because I believe the standard, the NGOF standard, shows that she did not make progress appropriate in light of her circumstances. Can I ask you, even if that's the thrust of your argument, can I ask you to address another argument you did make in your brief, that there was a procedural violation when RF's parents were cut out of the process from September to December 2016, and that that was a denial of a FAPE? Can you address that a little bit? Certainly, I'll be glad to address that, Your Honor. So there was, in December of 2016, the school changed RF's educational program where she had been in general education for 14 and a half hours a week, and that's what the IEP said. They moved her out of the general education classes into the self-contained special education class. There was no IEP, that was a unilateral change by the school, and the administrative law judge and the district court both found that that was a procedural violation of the act, but did not result in a denial of FAPE. And it didn't because it was a response to a circumstance that manifested itself by the counselor deciding that RF did not seem to be thriving in the more generalized educational environment and felt that a more focused approach with diminished external circumstances and stimuli might be more productive. And the reason for finding that it was a procedural violation but not a substantive FAPE violation was that it was calculated to address problems that manifested itself that could and were sought to be corrected. My only point is there was a recognition of, yes, it was a procedural violation, but it was motivated by, and it also seems sort of interesting, part of the reason I was hoping you would talk about the arguments in your brief is that talking about failing to educate RF in the least restrictive environment is there's some tension and some inconsistency because you seem to be, she's taken out of a more generalized environment and given more individual attention. There's a bit of an inconsistency in some of the things to which you seem to be objective. Well, she was isolated in that class for most of the school year, which is an unspeakable finding. She had a full-time paraprofessional and a counselor. Teacher. Teacher. Right. Because of the concerns that the distractions posed by the more generalized environment were posing. Yes, but let me just point out, and I see my time is almost up, is that she still did not make progress according to the undisputed findings of facts. The problem that was creating one of the problems was her behavior, which the undisputed findings of facts are that she did not. I'm sorry, I'm going over my time. No, please. Okay. That the undisputed findings of facts show that she did not make any progress towards her behavioral goals, and that was one of the main issues in the general education classroom. Also, she did not get any benefit from the academic instruction in the general education classroom. The problem is. This seems like you're going back to the argument that you disavowed, which was that you're, in essence, arguing that there's a guarantee that once the IEP is initiated, that there is going to be progress. And we've already been back through the language that indicated at some great length all the difficulties that your client faces where there can't be a guarantee of that. The school system parents try to do the best they can to come up with a program, but it seems like to me when you keep coming back to saying that there's no progress, you're really making an argument of a guarantee. I assure you, Your Honor, I am not. What I am saying, though, is that the school system was under an obligation to review and revise that IEP when this child was not making progress. That's right in the statute. So that's what I'm really saying. There's no guarantee, but there is a guarantee that the school system is required to meet and revise that IEP as appropriate, including changing her placement, which we had asked for multiple times, changing her placement to an environment where we thought she could make progress. And there is plenty of evidence in the record, including the school system's own documentation, that Aura made progress when she was in kindergarten. When she was in first grade, she showed some really unique problem-solving skills. She learned how to unlock her parents' cell phone and access a camera application, something that some of my colleagues can't even do. But it shows that she has problem-solving skills and she has potential. She has the potential to learn and make progress. And no progress ignores the fact that this is a child who has made progress and has potential. And I really apologize for going over that. No, that's fine. And you have some time for rebuttal. And I would appreciate your linking what seems to be your argument this morning with what I understood to be your argument as delineated in your statement of issues. Okay. Thank you, Your Honor. Mr. Anthony? Good morning, Your Honor. My name is Peter Anthony. I am pro bono counsel to the Judge Bassilon Center for Mental Health Law. We are participating in this matter as amicus in support of RF. Thank you so much for allowing us to participate in oral argument today. We submit that the district court made several errors of law, which we outlined in our brief. I'd like to focus my short time on the question of the deference that the district court provided to the decisions of the ALJ. Now, the Supreme Court, in both Andrew and Rowley, indicated that a federal court is to defer in part to the educational expertise of local school authorities. In addition, this court has made clear that the factual findings of an ALJ are entitled to a measure of deference because they are the ones who are hearing the witnesses, they are making credibility determinations. As is common, they are in the best position to find the facts. Neither of these two principles suggest that a district court is to defer to a state administrative law judge's conclusions of law on a federal statute. And that is what the district court did here. Citing to this court's decisions in Doyle and ML, the district court said that the determination of whether an IEP is adequate is a question of fact. Questions of fact are presumed to be correct. Now, when the district court said the question of the adequacy of the IEP, what he's really going to is whether the IEP provides a free and appropriate public education, which is the requirement under the IDPA. Now, and then the district court actually said explicitly, when it comes to the point about making progress, the district court said that the ALJ's findings of facts and conclusions of law as to progress are supported by the record and entitled to deference. So the district court explicitly deferred to the conclusions of law at the ALJ about whether the IEP provided a fate. Now, there are other cases in this circuit that say that the district court has to make an independent determination about whether the IEP satisfied the IDPA, which raises this potential for a conflict between these two lines of cases. How can a district court both defer to the ALJ's determination about whether the IEP is adequate, a.k.a. whether the IEP satisfies the IDEA, and at the same time make an independent determination of that fact? We submit that what actually this court has meant and the way that these two lines of cases are to be read in harmony is that this court should recognize that this is actually, in fact, a mixed question of law and fact. And as we outlined in our brief, every other circuit in this country says that, that whether the IEP is adequate is a mixed question of law and fact, one in which the factual findings made by the ALJ are entitled to deference, and one in which the conclusions of law made by the ALJ are not entitled to deference. In addition, we also outlined in our brief other errors of law that we believe the district court made. For example, the district court articulated the requirements under Rowley as the IDEA only requiring equal access. That is actually a proposition of law that has been cited, comes from this court's decision in ML in 2017, and has now been cited by multiple district courts. We believe that is a misreading of what both ML was stating and what Rowley requires and what the IDEA requires. The Supreme Court in Endrew spoke specifically about the concept of access and said that the IDEA is access to an education, and an education is emphasizing the importance of progress is progress through the system. Can I just ask you if, contrary to your colleague, if I read the ALJ as clearly applying that substantive standard from Endrew F., and given that our sort of modified de novo review, does it really matter if the district court applied a different standard? I think it does, Your Honor. The way I read the ALJ's decision is to say that progress may or may not be appropriate here. You're disagreeing with my premise, but just hypothetically assume that the ALJ applied the right standard. If that is the case, does it matter if the district court applied the wrong standard, given that our review is de novo? I do believe that is correct, because I do believe under Endrew F. Which is correct. That it would be different. That the conclusion would be different, because Endrew F., the ALJ's conclusion is that minimal progress was appropriate in these circumstances. Endrew F. specifically says it can't be the case that we are aiming for grade level advancement for most students, and then minimal to no progress for others. And so I think that the minimal progress that the ALJ found, even assuming she looked at progress appropriately, it wouldn't be the appropriately ambitious, challenging objectives that the Supreme Court continuously emphasized. So what do we make of the in light of the child's circumstances? The difficulty that I'm having with the way you formulated, as well as RF's counsel, is that it takes away context. Because progress is going to depend on the circumstances, the context, which will change from, which may not be as ambitious in some circumstances, reasonably be as ambitious in some circumstances as others. No, absolutely, and progress will always depend, and the goals will depend on the circumstances of each individual child. But the Supreme Court in Endrew repeatedly emphasized every child should have the opportunity to meet challenging objectives. And so when the ALJ said explicitly she made some progress towards, quote, very basic goals, that seems to run into conflict with Endrew's explicit saying, no, no, we don't want very basic goals continuing year after year where they make no progress, which is what was going on in Endrew, in which the district court on remand found was insufficient in light of Endrew, that that is sufficient. I see I'm out of time, so I'm happy to answer any questions. Thank you so much for your time. Thank you. Mr. Burkhouse?  May it please the Court. My name is David Burkhouse, and I am counsel for the appellee of the Board of Education of Cecil County. Your Honor, with your permission, I'd like to pick up on the issue that you were addressing, which is whether or not an outcome is promised under the IDA or whether it's an opportunity. Clearly, the court in Endrew contemplated that the IDA would provide students with disability challenging opportunities to make progress. Indeed, the court says in Endrew that the IDA cannot and does not promise, quote, any particular educational outcome. And as we see in Rowley, as well in Endrew, the language reasonably calculated is used in evaluating the IEPs that are developed for students with disabilities, because while the desire is to provide an outcome for students with disabilities that's reasonable in light of their unique circumstances, even the best-made efforts sometimes do not yield the results that educators would like. Your Honor, in addressing the issues that appellants have raised in their brief, I'd like to begin with the issue of the least restrictive environment. Appellants contend that Cecil County Public Schools violated the least restrictive environment requirement when RF was moved from having her special education services in the general education environment to what was called the Intensive Communication Support Classroom, or the ICSC, as it's referred to in the record. Counsel, maybe you can help me out. I'm confused by that claim because I thought that the parents of RF, that their objection all along had been that she was spending too much time in the general classroom. So what is going on here? That's correct, Judge. It's somewhat contradictory. RF's mother contended, and it's in the record, that she did not believe that RF should be attending any classes with non-disabled peers, that RF couldn't receive any value from that. So if there was error here, would you say that was invited error by the plaintiffs? Your Honor, I would say that the appellants here have tried to turn the least restrictive environment requirement on its head. They're actually arguing in their briefs that a private placement at a school that would give RF access to only non-disabled peers is actually less restrictive than... Disabled peers. No, the appellants are arguing for a private placement at the Benedictine school. Which would give access only to disabled... Disabled peers, I'm sorry. That was my point. Because it's very hard, I have the same sort of analytical difficulty, because if we know anything, I thought it was that the goal of the IDEA is to mainstream disabled children into general education classes. And this seems to be an effort in the opposite direction. That's right, Judge. The appellants are advocating for a more restrictive placement than RF received. RF received, even when she was removed... So it contradicts the argument they now make on appeal. That's right, Your Honor. RF received her academic, even after the change in her placement, which admittedly was unilateral and violated procedural safeguards, received her academic instructions in a pull-out classroom, but still received access to specials such as math, music, art class, went on field trips, had access to lunch, was walked around the building in order to have socialization with her non-disabled peers. She had that additional access to non-disabled peers, and that was a less restrictive alternative to attempt to meet her needs than the placement that the appellants advocate for. Can we move on to the procedural violation? Because both the ALJ and the District Court found that there was a procedural violation when the IEP was unilaterally changed without notifying the parents, and very substantially so. But they went on to say that under our existing case law, it didn't really matter because the IEP was substantively reasonable. So my question is, why that case law hasn't been abrogated by this 2004 amendment, which seems pretty clearly to say that, although usually when you're considering whether there's been a violation of a free, appropriate public education, you look at substantive grounds, but there are three exceptions to that, and one of them is for procedural violations that significantly impede the parents' opportunity to participate. So why don't we have a problem here under this newish statute? Well, the reason we don't have a problem, Your Honor, is that the court in DeBueaux rejected a per se rule. That was before the statute, right? Yes. Okay, so my question is, why doesn't this statute abrogate the precedent on which the District Court and the ALJ relied? Well, Your Honor, simply because the statute still provides the court with discretion in determining how to craft a remedy. Yeah, but it can't be. The statute doesn't make sense if you can use that discretion. Oh, in terms of a remedy, right. But that's not what the ALJ and the District Court said. They just said there's not a violation of FAPE here. They didn't say there's been a violation, but now we'll use our equitable powers to fashion the right remedy. They said there's no violation because the plan was substantively okay, and I just don't see how that can be reconciled with the statute. Well, Your Honor, it can be reconciled with the statute to the extent, and the case law is somewhat confusing on this issue, even this court has referred to whether or not a claim can be made if there's no remedy due. The Supreme Court in the town of Burlington said, quote, reimbursement is a remedy under the IDA, which merely requires the local education agency to belatedly pay expenses that it should have paid all along, and would have warned in the first instance how to develop the proper ID. Right. I think there are real questions about what the right remedy would be here, but my concern is that neither the ALJ nor the District Court considered that question, because they both said that under our pre-2004 amendment case law, there had been no violation to remedy in the first place. So if we think there was a violation, I totally understand that there are questions about what the right equitable remedy would be, but no one has considered that. Shouldn't we send it back and let someone else take a look at that? Judge, I would point out that section 1415, that includes that language may, says may find that there's a violation of pay. It doesn't say may offer a remedy. I understand, but I think that you can't really, the first two things to say about that, one is that neither the ALJ nor the District Court thought they had any discretion under our prior case law. They just thought if the IEP is substantively reasonable, there is no violation, period. Because that's what we said until this statute was enacted. And also, the statute says, the first part of the statute says that, subject to these exceptions, a decision made by a hearing officer shall be made on substantive grounds. But we have these three exceptions. If an ALJ could use its discretion to say there's no violation, if the IEP is substantively reasonable, this whole structure makes no sense. Congress would have just stopped when it said, a decision made by a hearing officer should be made on substantive grounds. If the IEP is substantively reasonable, we're done. Your Honor, I would submit that in providing that discretion for those exceptions there, that Congress was acknowledging the fact that the courts go through all sorts of equitable considerations in determining whether or not ultimately a remedy is due under the IEP. But none of that happened in this case. Do you want us to do that in the first instance? Wouldn't it be more sensible to send it back and tell the ALJ and or the district court, you should do what you're talking about now? Your Honor, I would submit that the district court did do that when it determined there was no substantive violation. I think, if I'm understanding what you're saying, I don't know if this is the answer, but what I think you are saying, and correct me if I'm wrong, you think it's implicit in what the district court and the ALJ did. That they evaluate, that's the evaluation, that's the analysis that they conducted in reaching a conclusion that there was no substantive violation. Yes, Your Honor. Essentially, the harmlessness, I'm sorry. No, please. The harmlessness analysis under DABUO is in and of itself a determination of whether a remedy would be due. Because the standard under the IDA is whether the child has been offered what they're substantively entitled to under the law. No, but we don't know that. We don't exactly, that may be your response, but we don't know that that's, we have to assume that that's the analysis that the ALJ and the district court engaged in. We don't know that. That's right. Your Honor, I can see, we don't know that it is conceivable that the court was unaware that it had such discretion. But both the ALJ and the district court determined that there wasn't a substantive deprivation. And it is your view that even under this statute, if the IEP is substantively adequate, there can be no denial of a free appropriate public education. Even under these new amendments, which say that as a general rule, a decision made by a hearing officer should be based on substantive grounds. But there are three exceptions, cases in which allegations of a procedural violation may actually constitute a violation of a free appropriate public education. Well, Your Honor, I would think there, hypothetically there would be cases where procedural violations might lead to... Don't necessarily, I mean, they would be taken into consideration, but it wouldn't necessarily result in the denial, substantive denial of a thing. That's right, Your Honor, and there may be cases... Because there's no point in putting it into, there's no point in not making it dispositive if that's the case. It's ambiguously, I mean, it's not entirely free from ambiguity either way. That's right, Your Honor. I'd like to point out that there are instances where a court might want to issue some sort of injunctive relief regarding a systemic procedural violation or the way a school system is handling matters that are separate and apart from whether an individual student has received a substantive fate under the IDA. So there may be circumstances where the court would want to offer some sort of injunctive relief. Well, what about, I mean, I read the statute differently, I guess, as saying that usually, if the IEP is substantively adequate, there's no fate violation, but there are these exceptional cases where there may be one simply because of the procedural violation. And it looks to me like for four months here, the parents had no opportunity to participate in the decision-making process because the change was made unilaterally without consulting them, and there's no evidence in the record as to why that happened. But, you know, parental involvement is pretty much the engine of the IDA, so that seems pretty significant. So your view would be there's no remedy for that? Because it sort of gets water under the bridge. That was a four-month period. It was resolved in December. Your Honor, there is no reimbursement remedy due, which is what the IDA provides. What about compensatory? Aren't there cases where a FAPE has been denied for some period of time, and then the remedy is you get sort of an extra four months tacked onto when the student becomes 21 all over summer as compensatory services to remedy a temporary violation of a FAPE? Judge, compensatory services would be aimed at providing the student with what they were entitled to receive, but did not receive during that period of time. But here, this wasn't... It was not a matter of what was denied the student. It's a matter of the parent... It's that period before the IDP was revised in December that the parents were participating. So the question... I'm not sure how compensatory relief works. The problem... I guess I read the statute a little bit differently because it does not seem to me necessarily unreasonable that the IAJ could have decided that looking at the nature of the violation, that there was no harm from... The parents were pretty clear for the entirety of this process about the only thing that they thought would be acceptable, and that was the private placement in the Benedictine school. That's right, Your Honor. So that particular denial would not have had... would not have given them what they wanted, what they had fairly consistently said is the only thing they wanted. So the problem is more that the ALJ didn't walk through its analysis in that regard. Yes, Your Honor. I'm not sure that was a question or very clear, but I guess I read the statute as having a little bit more... as necessarily having a little bit more flexibility, perhaps, than my colleague might. And I'd like to point out, in terms of whether the statute's amendment has abrogated this court's holding in Dubuque, I think I'd be remiss if I didn't point out that this court reaffirmed its holding in Dubuque in TB just last year, in which the court said specifically the prospect for recovery for a procedural violation of the IDA depends on whether the student's disability resulted in a loss of faith. And the parents withdrew their request, did they not, for compensatory education? In TB? In this case. In this case, the appellants were seeking a prospective placement going forward at the Benedictine School. Right, not compensatory, not... right. The appellants characterized the placement they were asking for in the future as compensating... So that's the only remedy that's been on the table on this case, is placement at the Benedictine School. There's no other damages, extra summer school, or anything like that. It's either the Benedictine School or nothing. I believe the appellants characterized it as the Benedictine School or another placement because I suppose it's not entirely clear at this point whether the Benedictine School has an opening to accept our appellant. Right, I understand. Judge, in addition, I think it's worth noting... You could read the statute as simply saying that there are three instances in which a procedural violation could be a substantive violation. That's how I read the statute, Your Honor. And I read the statute, and the way that de Beauvold holding fits into that discretion is that it is this court's guidance on how district courts should be exercising the discretion that is still contemplated under that 2004 amendment. Furthermore, in TB, this court notes that several circuits, in addition to the 4th Circuit, also still employ this harmlessness analysis, including the 5th, the 3rd, the 6th, the 1st, and the D.C. Circuit. Several of those decisions that are cited by this court in TB post-date Congress's amendment of the IDA in 2004. There are a bunch of other circuit court cases that I could cite you from the 2nd Circuit, the 11th Circuit, that say we used to do it this way, but check out this statute. It turns out, under the 2004 amendments, you can have a purely procedural violation of faith, even if there is no effect on the substantive adequacy of the IEP. So we would be in conflict with those circuits. I would agree. The 4th Circuit would be in conflict with those circuits, Your Honor. Cecil County's position would be that while you may find a violation based on those procedural violations, it is not a per se rule. But would you say you could find a violation of a faith based on those procedural violations, even if the faith is substantively adequate? I think there are situations where the interference with parental rights would be stark enough that the court would want to find a violation. Even if the IEP were substantively adequate. But you would say here the standard is significantly impeded and there was no significant impediment under the facts of this case. Your Honor, I do not contend that the issue of parental participation is an insignificant one under the IDA. But on the facts of this case, it may be that the interference here was not that significant given that the change was only what the parents had been asking for all along. Your Honor, the change in this case, I would say, was unique in the respect that generally a unilateral amendment of an IEP... I think your answer is yes. Your answer is yes. There might be a circumstance where there might be a significant impediment. But your argument is that there was no significant impediment here because it simply moved the circumstances in the direction that the parents were seeking, and that is away from the general education setting that they took issue with. But Judge, I think more importantly, it moved RF's program towards what she needed. The undisputed facts in the record were that RF was having trouble staying seated in class, that in point of fact, keeping RF in the placement that was listed in her IEP without changing it would have deprived her of FAPE. Because the school staff no longer would have had a reasonable belief that it was calculated to provide her FAPE, given those interfering behaviors. Is there anything in the record about why the school didn't just contact the parents? This does seem like such a fundamental part of the statute, that you keep the parents in the loop. So what happened here? It does... And there are no prior violations. It appears from the record, at least, that the school district is doing everything right here. So what happened with the parents? The record makes it seem more binary than Mr. K, the teacher's testimony, in fact, reflects. It was a situation in which there was a gradient. And so what happened was Mr. K encountered the behavior so there would be days that he couldn't take her to the general education class. And I guess that process became more common. It wasn't that Mr. K unilaterally decided one day, you know, I'm done with gen ed classes and I'm going to change your placement and, you know, I don't need to have another IEP meeting. It was as this practice became more prevalent based on her interfering behaviors, by December, you know, it was clear that, you know, you've essentially changed the placement here and you didn't hold an IEP meeting. So they held one to correct that issue. Thank you for the court's intelligence. Thank you. The IEP meeting that was held in December was held at the request of the parents because RF was not making progress. And even though they had said in the spring that they wanted RF to be at the Benedictine school, when they were told that the school was creating this special class, the ICSC class, they were willing to give that a try. But by December, they saw that there was no progress. Now, that wasn't the change of the IEP, I'm sorry, the change of RF's educational program in September was not the only time that the school unilaterally changed her program. They did it again in January, January of 2017. The IEP meeting in December, they said that we're going to change the IEP to reflect what we had already decided back in September and implemented in September to reflect that she would be in general education classes two and a half hours a week and that would be for specials only, art, music, library. In January, within weeks of that IEP meeting, and the reason they did that is they said that she was not, everyone agreed, she did not benefit from being in general education academic classes. In January, just within weeks of that meeting, the school then moved her back into general education academic classes without holding IEP, meaning unilaterally, no parent involvement. The parent did not even learn about this until the due process hearing when the teacher testified that they had made that move. So we have, again, procedural violations where the parents are left completely, not just significantly impeded, but completely left out of the decision making. And I think under those circumstances, it is a procedural doubt denial with faith and that 1415 F3E is very clear on that, that it, that denies faith and that this, the decision of the district court administrative law judge should be reversed on that basis. What about the question of relief for, assuming for a moment, just hypothetically, that there was, there could be, or there was a denial of a faith based on a significant impediment to parental participation, but that's over, it's been cured. How do you, what's the relief for something like that and why would it be going forward a private school placement? How does that address the wrong? Your Honor, in our reply brief, we made it clear that we were asking for either the Benedictine school or equitable relief, which this, we would ask the court to remand. But what would that look like? What would it be? Well, in our opinion, it should be something outside of the general, outside of the public school system because this was the best program they could offer. They don't have anything else that they can offer this child. So she does need to be in a highly specialized program. But how does that address, if the harm is that the parents were cut out of the process, assuming that that is an independent ground for saying that for this four-month period there was no faith, no schools not offering a free, appropriate public education, how do you fix that by now, two years later, doing a private placement? How does that address the harm? Giving her a program, by giving her a program where she really can make real progress. That addresses a different harm, and I'm assuming for purposes of this question that the only harm we have in front of us is this procedural violation of really parental rights to be involved. Well, there's other violations here, Your Honor. Okay. See, I'm exceeding my time again, and I apologize for that. But in our brief, we did point out that the hours in the IEP were inadequate. I just wonder before, I know you're out of time already, but I would love it if you could answer my question, which is if you would just assume hypothetically, just for a minute, and I understand that you think there were other violations, but just hypothetically, if there was one violation and that violation was the procedural violation of the parental right to participate for four months in 2016, what would equitable relief for that injury look like? I think it looks like a program in which the child, which she missed out on during that time, which we believe she was not making progress and missed out on an appropriate education. That isn't responsive. That's not responsive? No. The question is, the violation is the parent's involvement, or at least it wouldn't be responsive to what? I think we have the same question. The problem is that period when, and it sounds as though it wasn't an action that was undertaken in one day. There wasn't just a decision to pull RF out of the general education environment and into the more isolated environment. It was incremental. Because it was incremental and the parents were not notified or given any input into that decision, what's the relief for the procedural violation of that failure to make the parents a part of that discussion? I have to admit it's a difficult question to answer, Your Honor. In the Andrew F. case, the parents unilaterally withdrew their child from the public school and then asked for reimbursement. My clients did not have the resources to be able to do that. If there was a denial of faith in this case and they had done that, then we would be asking for reimbursement, which I think would be the relief. So I think in light of the fact that there are going to be plenty of parents who don't have the resources to do that sort of thing, equitable relief would mean doing the same thing as if the parent had unilaterally placed their child, and that is saying this child needs to be placed in a program. For four months. I'm sorry? For four months. Well, we had more than just the one procedural violation. But the question... Okay, if we just said it was for four months. Compensatory education does not... It doesn't remedy the problem of the parent's involvement. Yes, but, well, okay. So maybe it would be for four months. But that's a remedy you're making up now. There's nothing in the record that gives us that. Well, I'm just trying to answer the question. I understand, I understand. Okay, thank you very much. Thank you.
judges: Allyson K. Duncan, G. Steven Agee, Pamela A. Harris